## North Penn Savings and Loan v. La Mar, Inc.

*David Howell* and *Otto P. Robinson, Jr.*, for plaintiff.

*W. Boyd Hughes*, for defendant.

CONABOY, *J.*, July 14, 1977—This matter before the court is an action to quiet title commenced by North Penn Savings and Loan Association. North Penn purchased the premises which is the

subject of this suit at a sheriff's sale. Defendant, LaMar, Inc., was in possession of said premises pursuant to a lease which was entered into by defendant, LaMar, Inc., and Lomma Realty Co., a prior owner of the premises.

The issues before the court are: (1) Does a current lease entered into pursuant to an option to renew, contained in an earlier lease, relate back in time to the original lease so as to create a paramount right of possession in lessee over a buyer of the property at a foreclosure sale. The mortgage took place prior to lessee's exercise of the option, but subsequent to the date of the original lease agreement. Additionally, the mortgage was filed prior to the renewal and the foreclosure took place after the renewal. (2) Is there a valid lease between the parties in this action?

On February 20, 1969, the Meco Realty Co. entered into a lease with LaMar, Inc., defendant herein, for one of the store premises in the Mears Building[1] on the first floor of the building on the Washington Avenue side of the property. The term of the lease was five years. The lease contained the following provision: "Lessee (LaMar, Inc.) is hereby granted an option to renew for another (5) year period providing lessee give lessor written notice ninety (90) days prior to the expiration of the lease. A review of the rent at the end of the first five (5) years to determine the present market situation."

The premises in question was sold by Meco Realty

---

1. The Mears Building, a large building at the corner of North Washington Avenue and Spruce St., was the subject of the mortgage and foreclosure.

to Lomma Realty Co. and on March 3, 1972, the Lomma Realty Co. executed a new mortgage to the Scranton Savings and Loan Association on the aforesaid Mears Building.

In February of 1974, Lomma Realty Co. entered into a lease with LaMar, Inc., t/a Club C & C, for a period of five years on the store premises. Lomma Realty Co. in August of 1975 sold the building, subject to the mortgage to the Carlton Realty Co. When Carlton Realty Co. defaulted on the mortgage, a judicial sale was held and the Mears Building was purchased at the sale by North Penn Savings and Loan Association, formerly the Scranton Savings and Loan Association.

The property was then sold to Penseco Realty, Inc., a wholly owned subsidiary of Penn Security Bank & Trust Co. Penseco Realty, Inc. now desires possession of the store occupied by LaMar, Inc. asserting the lease of February of 1974 is inferior to the title obtained under the judicial sale. Defendant asserts the lease is valid, maintaining it was entered into pursuant to the provision in the original lease between Meco Realty and LaMar, Inc. in February of 1969.

The Act of April 20, 1905, P.L. 239, as amended, 12 P.S. §2585, sets forth the relative rights of possession of tenants and purchasers at judicial sales:

". . . The right of possession of a tenant for years shall be deemed paramount to that of a purchaser at a judicial sale if, and only if, the letting to him shall precede in point of date the entry of judgment, order or decree on which such sale was had, and also shall precede the recording and registering of the mortgage, deed or will, if any, through which by legal proceedings the purchaser derives title. . . ."

Restated in terms of theory this section has been read to mean that: "Though a leasehold interest is personalty, usually described as a chattel real, it is nonetheless an estate carved out of the fee, and treated as such for purposes of divestiture. Thus the lease is not divested in an execution sale on a subsequent encumbrance on the landlord's reversionary interest. In such case, the tenant's right of possession is superior to that of the purchaser at sheriff's sale." Brown, Execution Sales: Lien Divestiture and Distribution of Proceeds in Pennsylvania. 58 Dick. L. Rev. 244, 262.

As concerns this case, the importance of this comment is its conclusion that under the act the only pertinent issue is whether the inception of the lease term preceded the effective date and filing of the mortgage. Accord, Wilford, Trustee v. White, 16 D. & C. 469 (1931). In conclusion, if the lease is first in time, the tenant for years prevails even if the sheriff's vendee was a bonafide purchaser.

The court rejects defendant's contention that the superior right of possession defendant would have had over the 1972 mortgagor by way of its 1969 lease was preserved by way of exercise of the option to renew, and resulting creation of the 1974 lease. While it cannot be disputed that the 1969 lease predated the 1972 mortgage, the 1974 lease obviously did not. The 1974 lease or "letting" occurred at the time of its signing or the giving of notice of the exercise of the option to renew, both events being subsequent in time to the recording of the mortgage under which the property was sold.

The 1969 lease contains a covenant to renew, which involves an agreement to make a new lease: Aaron v. Woodcock, 283 Pa. 33, 128 Atl. 665 (1925);

Sloan v. Longcope, 288 Pa. 196, 135 Atl. 717 (1925), citing Aaron v. Woodcock, supra; Petit v. Tourison, 283 Pa. 529, 129 Atl. 597 (1925); Mecklenburg Real Estate Co. v. Kyoleum Co., 218 S.W. 821, 822. "A covenant to renew is a covenant to grant an estate, and not a present demise, as distinguished from a covenant to extend, so as of itself and alone to continue the tenancy for the renewal period, hence, it calls for a new lease, or a formal extension of the existing lease." Riggs v. United States, 12 F. 2d 85, 87 (D.C.S.Car. 1926). See also Waldrop v. Siebert, 286 Ala. 106, 237 So. 2d 493 (1970).

The court's conclusion that the exercise of the renewal option by defendant constitutes a letting within the meaning of the Act of 1905 follows the Philadelphia Common Pleas Court's rationale in Logan Trust Co. v. Stafford & St. James Hotel, 30 Dist. R. 317, 318 (1921), wherein the court held, "each renewal after the original term by a holding over with the consent of both parties was a letting within the meaning of the Act of 1905."

In conclusion, the word "letting" as used in the Act of 1905 does not include the mere granting of an option but rather contemplates the time at which the obligation to lease becomes binding on both parties to it. Such an obligation did not come into existence until defendant exercised its option in 1974.

Thus the superior right of the lessee to possession of land in a lease executed prior to a mortgage recordation will not survive upon the exercise of an option to renew when such option will only become binding on the parties subsequent to the intermittent mortgage. The rights of the buyer by way of the

1972 mortgage and the foreclosure thereon in 1976 are superior to that of the lessee under the 1974 lease.

The second and pivotal issue before the court is whether or not plaintiffs in this action affirmed or disaffirmed the 1974 lease entered into between defendant and plaintiff's predecessor in title.

A purchaser of property at a sheriff's sale under a mortgage, prior in date to a lease of the premises, may affirm or disaffirm the lease. If he affirms it, he becomes subject to all the advantages and disadvantages of the lessor: Curry v. Bacharach Quality Shops, Inc., 271 Pa. 364, at 370, 117 Atl. 435 (1929); Hempell v. Tevis, 4 W&S 535 (1846).

After a careful examination of the oral testimony and exhibits offered, the court finds that plaintiff, after the event of the sheriff's sale, disaffirmed the 1974 lease. As a result of this disavowal plaintiff is not bound by the 1974 lease.

James R. Giardina was hired by plaintiff in July of 1976, to act as its agent for the collection of rents and the management of the Mears Building. Plaintiff's exhibit No. 7 is a form letter which Mr. Giardina personally delivered to every office. The first paragraph of that letter stated that: "By operation of law, your lease with Carlton Realty, Inc. (successors to Lomma Realty, Inc.) was automatically cancelled when the North Penn Savings and Loan Association acquired the property at a Sheriff's sale." Although the accuracy of this assumption of law is questionable, the intentions of plaintiff are unequivocally clear. Plaintiff was disaffirming the 1974 lease defendant had with one of plaintiff's predecessors in title.

In further support of defendant's disaffirmation

of the 1974 lease was plaintiff's offer of a new lease to Miss Tomaselli, the president of LaMar, Inc., defendant herein. Miss Tomaselli admits receiving both the letter and the new proposed lease. Numerous bills were sent by plaintiff to defendant all of which represented that the rent would be $1,000 per month.[2] The cumulative effect of these bills would further suggest that it was plaintiff's intention to proceed under the terms of the new contract as was originally offered to plaintiff.

It is the final determination by the court that plaintiff in this action is the owner of the premises involved herein. Judgment is entered in his favor, at the cost of defendant. Furthermore, defendant shall pay $1,000 per month which was the rental rate of the property from July 1976, through July 1977, or a total of $13,000. In view of the testimony and supporting exhibits the court finds this $1,000 per month to be the fair rental value of the property. This sum represents the damages for detention pursuant to 12 P.S. §2582.

## ORDER

And now, July 14, 1977, the court finds:

1. Plaintiff has a right to possession of the premises now known as the Club C & C.

2. Defendant is to pay plaintiff $13,000 in damages. Said sum representing the fair rental value of the property to date.

3. Each party to pay its own costs.

---

2. It should be pointed out that the $1,000 monthly rent claim differed from the rental in the original lease which was $575 per month plus costs of water and sewage and electricity.